Birchard, C. J.
The principal question presented by the bill and demurrer is, whether the application to insure was ac *218 cepted. The complainant contends that a contract to indemwas ma(^e> an^ subsisted at the time that the loss happen-This the defendant controverts insisting that the agreement was incomplete. If the contract was made, though not reduced to writing, the obligation to perfect the insurance may be inforced, in a Court of equity. To sustain this proposition, the cases cited by counsel are full. This point is not seriously questioned.
In determining whether a contract was actually made, assuming all the allegations of the bill to be true, we must look closely into the correspondence between the parties, and see if from that, aided by the allegations of the bill, the evidence of the assent of both parties to the terms of the agreement be clear and unequivocal. The first proposition by Neville, of December 29th, was to effect an insurance from Cincinnati to New Orleans, for at least five thousand dollars, or his interest in two flat boat loads of Indian corn, supposed quantity 9,000 bushels, declaration of quantity to be made the next day. The Company replied, the next day, requiring a survey of the flat boats before they would decide upon the risk. The next step was to procure a survey, as required; and deposite 'with the company a more particular specification of the risk which the complainant desired to have taken. This second application, or specificatipn of terms, is the note of Neville, dated January 1, 1847. It requests insurance, hence to New Orleans, on the flat boats Eagle and Clinton, and their cargoes of 4,962 sacks of corn, &c., at $6,000, the surveys to be handed in the next morning.
The surveys were accordingly presented to the Company on the morning of the next day and the parties agreed that the premium for the risk should be four per cent, on the value of the property. The next step was a note from the Company’s clerk, stating that there appeared to be an overvaluation of the com, that their rule was market value and five per cent, added, which they always adhered to. “ Please let me know respecting it.”
*219 Let us pause here, one moment, and consider what was the actual state of the negotiations at this point. There is a perfect agreement upon every subject necessary to constitute a policy, save one, and that was the valuation of the property upon whicli the risk was to be taken. Upon this point, the last proposition of Neville to value the boats and corn at six thousand dollars, was modified, and the proposal here offered is to fix that sum, so far as the com was concerned, at the market value, adding five per cent. One thing only was wanting to finish and perfect the contract. That one thing was Neville’s acceptance of this modification of the amount to be insured. He accepted the proposition by his third note. On your terms, the corn in sacks cost $5000. And as near as possible advances on the boats $550, to be included in the policy, $5550. The effect of this is the same as an affirmation in this form: “You have offered to value my corn and boats in the policy which you agree to issue, at the market cost and five per cent, added. I agree to and accept those terms, for that rule makes the sum $5550.” If this is not the language which this conduct speaks, we are unable to gather the meaning of men from their words and actions. Had the proceedings stopped here, however, there might have been some possible chance to doubt whether the perfect agreement as to valuation was entirely clear. We will see if the Secretary’s next note throws any light upon the question. To make the case more plain, let us transpose this letter. “ The market price and five per cent, is the rule.” “ We do not feel justified in deviating from it.” This is but reiterating the terms of the last proposition from the same party, which had just been acceded to. The only change is, market price is here substituted for market value; but the same idea is meant to be conveyed by each form of expression. The writer and the person addressed so understood the words, and both treated the terms market price or market value as meaning the cost of this corn in the market. But we will proceed with the residue of the 3d note: “ It may stand insured until Monday, when we shall be glad to see you. We cannot under *220 stand how 10,987 bushels of corn should cost $5000, when tpe mavket pr¡ce is but twenty-one cents.” The parties both , r , , . . , when this note was written, what their contract was. The risk was upon the corn and boats from Cincinnati to New Orleans. The premium at four per cent, on the value, and that value estimated at $5550, the market value, and five per cent. The sum had been stated by Neville and agreed to by the Company, they assuring him that it should stand insured at that sum till Monday,, when they would be glad to see him on the subject, because they-could not understand how his Indian corn cost so much more than the market price of other corn. Neville promptly replied -that he was prepared to show that the sum insured did not exceed their limit.
Throughout the whole of the negotiation there seems to have been no misunderstanding, and no difficulty except in settling upon the sum of the valuation. A valued policy was contemplated by both parties. All the negotiations had reference .to such a policy and none other. The rule of valuation had been stated in the private interview at which the four per' cent, premium was agreed upon. Neville, it is evident, was anxious that the sum should be fixed, so that in the event of a loss he would be relieved from the burthen of proving the value.
Both knew the amount' must be agreed to. Both agreed to the rule fixing the amount. Neville fixed the sum according to that rule, and the Company by their letter say it shall stand insured at that sum till Monday, when we want to see you, because we do not understand how you make it so large, when-other corn is twenty one cents only. ■ This was what Neville must have understood. It is what any one would have understood from all that had been said and done. The boats were to leave port that night. The necessity existed for a conclusion of the contract before they left port. It was concluded, and the Company became bound in equity, and agreed to abide the risk upon the $5,550 for the whole voyage, Unless upon the interview of Monday, such Explanations should be had as would induce Neville to reduce'his valuation. If we search for the thoughts *221 of the parties, and gather them from their acts, the 3d note of the Secretary ought not to be understood as a disagreement to the sum fixed by the complainant. The object of it was to prevent the Company from being concluded, in case the amount should turn out to be fraudulently fixed above the actual value. We cannot understand how your corn cost so much above market price, yet it may stand insured until Monday, when we shall be glad to see you. How stand insured ? The answer is, upon the terms heretofore offered by us and to which you have agreed. Upon your valuation. Why stand insured at that rate for the whole voyage, till Monday only ? The answer is palpable. It is now too late to negotiate further. It is Saturday night and your boats must leave port to night. They must leave at your risk, unless we accept the risk for the voyage upon your terms. We therefore take it, relying upon your statement till Monday. But on Monday you must see us, for if you have deceived us on the subject of the value, it will be your interest to make the proper correction in the policy. We cannot understand, &c. As much as to say, we have relied on you, and if you have deceived us, we shall on Monday be able to satisfy you that it is for your interest to submit to a proper correction.
Suppose the voyage had been accomplished without loss, would the insurers have found any difficulty in recovering the premium of four per cent, on the $5,550 ? A majority of the Court think not. While we all unite in the opinion that if the Company in that case could have maintained a suit for the premium, the demurrer to complainant’s bill should be overruled. The case of the Ocean Insurance Co. v. Carrington, is relied upon to show that suit could not have been maintained for the recovery of this premium. But the cases are unlike. There, the offer of the Company was to insure 20 oxen and 26 horses, at fifteen per cent., or if the insured would warrant the property safe on a certain day, at ten per cent. Carrington accepted in this form, “We accept your terms, with a policy filled on 26 horses, valued at $2,200, and 20 oxen, valued at $800.” The *222 Company forwarded a policy by mail on the following day, for on stock, &c., with this marginal note, “ 46 head of horses and oxen valued at $ 3,000.” The Court held that no recovery could be had for the reason that there was no contract. The ruling was doubtless right. The proposal was for a specfic valuation upon 26 horses; also, a specific separate valuation upon 20 oxen. The policy issued was for the aggregate value of both, and thus, instead of being an acceptance of the terms proposed, was an offer to insure on terms to which Carrington had not agreed. The case is sound law, but not decisive of this. It is not directly in point. A question has been made whether the decision of this Court, in Cockerell v. The Cincinnati Mut. Ins. Co., 16 Ohio Rep. 148, does not, in effect, determine this case. The point is not pressed, yet I. have to remark that this is a bill in equity to compel the execution of a. contract, as well as to obtain relief against the respondent, while that was a suit at law upon a policy, existing only in parol against the Company, whose charter, no less than the commercial law, required all her policies to be in writing.

Demurrer overruled, and leave to ansioer.

Hitchcock, J. dissented.